YOUNG, Appellee,

v.

INTERNATIONAL BROTHERHOOD OF LOCOMOTIVE ENGINEERS, Appellant.

[Cite as *Young v. Internatl. Bhd. of Locomotive Engineers* (1996), 114 Ohio App.3d 499.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 69317 and 69582.

Decided Sept. 30, 1996.

500

*Reminger & Reminger Co., L.P.A.,* and *Nicholas D. Satullo,* for appellee.

*Nurenberg, Plevin, Heller & McCarthy Co., L.P.A., Joel Levin, John J. McCarthy, J. Charles Ruiz–Bueno, John Schloss* and *Kathleen J. St. John,* for appellant.

NAHRA, Judge.

Appellee, Janet Young, sued appellant, International Brotherhood of Locomotive Engineers, for breach of a contract of employment. Appellant is appealing the jury verdict in favor of appellee, Janet Young, in case No. 69317. Appellant appeals the award of prejudgment interest to appellee in case No. 69582. For the following reasons, we affirm.

This case was previously before our court in *Young v. Internatl. Bhd. of Locomotive Engineers* (June 24, 1993), Cuyahoga App. No. 62771, unreported, 1993 WL 227069, and we reversed a summary judgment for appellant. Therein we held that there were genuine issues of material fact as to whether the union president, John Sytsma, had actual or apparent authority to make the contract, and as to whether the union ratified the contract. Appellant had argued that the contract was void as contrary to the Labor Management Reporting and Disclosure Act, Section 401 *et seq.,* Title 29, U.S.Code, but did not argue federal preemption.

On remand, trial was had and the jury returned a verdict of $366,988.11. The trial court granted appellee's motion for prejudgment interest.

Appellee was employed by appellant as Director of Health and Welfare and Director of Taxes. Appellee was not a union member. Her job consisted of bookkeeping for the pension fund and employee benefits fund and collecting of taxes. She served as a liaison between the union members and the insurance companies and retirement board. Her supervisors described her work as "administrative," and more than merely clerical. Appellee was not involved in policy-making for the union.

Appellee was a friend of and politically connected to the union's president, John Sytsma. In 1986, Sytsma, was up for re-election. Sytsma requested that the law firm of Chattman, Garfield, Friedlander & Paul write employment contracts for appellee and two other employees, Simmerman and Loomis.

The contracts were dated August 18, 1986, but were drafted several days beforehand. It was not established when Sytsma signed the contracts. On August 18, the union convention of delegates had assembled to elect a new president. The union constitution provides that when the convention is in session, the delegates of the convention are the governing body of the union.

Sytsma did not win the election and was replaced by Delaney as president. Delaney resigned in 1987, and was replaced by the vice president, Larry McFather.

Appellee's contract provided a term of employment of ten years. Appellee could be discharged only for just cause. The contract provided for liquidated damages of $50,000 for each full year remaining of the contract's term if appellee was discharged without just cause.

Copies of the contract were never sent to the union. The attorney who prepared the contracts, Wolgamuth, and Simmerman, an employee who received a contract, testified that Sytsma told them to keep the contract a secret. Sytsma denied this and stated that he discussed the contract with two union officials, who were now deceased. Rinehart, a member of the union's executive committee, stated that Delaney told him about the contract in September 1986, and that McFather knew about the contract. The union's attorney, Harold Ross, and Larry McFather testified that they were not made aware of the contract until the instant lawsuit was filed.

Appellee believed that Sytsma had the authority to make the contract because the president had the authority to hire and fire without consulting the executive committee or advisory board. The president made other contracts extending beyond his term, including contracts with the railroads, insurance companies and building maintenance. Sytsma and Rinehart believed that Sytsma had the authority to make the contract. The union constitution did not provide for or prohibit such a contract. McFather stated that Sytsma did not have the authority, because if the constitution does not provide for an action, there must be a policy set by the advisory board or convention delegates. No union employee had ever received an employment contract. Additionally, McFather asserted that the president had no authority to do anything on August 18, because the convention was in session.

McFather terminated appellee on April 17, 1989, almost three years after the contract was made and the change in union leadership occurred. McFather stated that other employees told him appellee was insubordinate and uncooperative and had made derogatory remarks about McFather. Employees Bobby Crawford and Harry Volpe testified that appellee made derogatory remarks and was uncooperative. Dennis Simmerman testified that appellee urged him not to cooperate with the new administration to show their loyalty to John Sytsma.

Appellee denied making such remarks and stated that she cooperated. Rinehart testified that appellee cooperated. An auditor from Peat, Marwick and Main testified that appellee cooperated with the audit.

I

Appellant's first assignment of error states:

"The trial court was without jurisdiction to hear Janet Young's breach of contract action, as that action is preempted by federal law."

Appellant moved for summary judgment and directed verdict, arguing that appellee's action for breach of contract was preempted by the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA"), Sections 401 *et seq.*, Title 29, U.S.Code. Other jurisdictions have held that an employee's state causes of action for breach of contract and wrongful discharge are preempted by the LMRDA, if the employee is a policy-making or confidential employee removed by new union leadership for political reasons. See *Coker v. Culinary Hotel & Motel Serv. Workers' Union, Local 226* (Aug. 12, 1993), C.A.9, No. 92–15799, unreported, 1993 WL 364472; *Hurley v. Teamsters Union Local No. 856* (May 1, 1995), N.D.Cal. No. C–94–3750, unreported, 1995 WL 274349; *Montoya v. Local Union III of the I.B.E.W.* (Colo.App.1988), 755 P.2d 1221; *Screen Extras Guild, Inc. v. Superior Court* (1990), 51 Cal.3d 1017, 275 Cal.Rptr. 395, 800 P.2d 873. These cases are based upon a United States Supreme Court case which held that an employee's cause of action under the LMRDA for discharge by newly elected union leadership was contrary to the purpose of the LMRDA of providing for free elections of union officials, if the employee was a confidential or policy-making employee. *Finnegan v. Leu* (1982), 456 U.S. 431, 102 S.Ct. 1867, 72 L.Ed.2d 239. Under the LMRDA, newly elected union officials must be free to discharge incumbent policy-making and confidential employees. Otherwise, these employees may thwart the implementation of policies and programs advanced by the elected officials and frustrate the will of the electorate. *Id.; Screen Extras Guild; Montoya; Hurley, supra.*

■ Whether this action is preempted by federal law turns on the factual issue of whether appellee was a policy-making or confidential employee. A purely clerical employee, such as a secretary/bookkeeper, is not the type of employee to whom preemption applies. See *Lyons v. Teamsters Local Union No. 961* (Colo.App.1995), 903 P.2d 1214. However, *Finnegan* has been applied to situations involving policy-implementing employees, although these employees do not make union policy. *Genco v. U.A.W., Local 1005* (N.D.Ohio 1989), 721 F.Supp. 879, affirmed (C.A.6, 1990), 907 F.2d 150; *Cehaich v. Internatl. Union, U.A.W.* (C.A.6, 1983), 710 F.2d 234. *Cehaich* specifically held that a benefits representative who implemented key union policy should be considered a "policy-making or confidential" employee.

The evidentiary materials submitted with and in opposition to appellant's motion for summary judgment established that appellee handled correspondence

and paperwork for various employee benefit programs; that mistakes by appellee could result in union members' losing benefits or penalties to the union; that she had access to workers' job descriptions, salaries and records of employment; that it was important that the union members felt comfortable with calling her if they had problems; and that a great deal of her duties were taken over by the computer which was installed in 1989. Based on this evidence, reasonable minds could reach different conclusions as to whether appellee was involved in implementing key union policy or had access to confidential information, such that she could thwart the policy objectives of new union officials. The trial court did not err in denying appellant's motion for summary judgment, because there were genuine issues of material fact.

The testimony at trial was clear that appellee did not make union policy. The evidence was such that reasonable minds could reach different conclusions as to whether appellee was involved in implementing key union policy. The trial court did not err in denying appellant's motion for a directed verdict. We also note that appellant failed to renew its motion for directed verdict at the close of all the evidence. See *Helmick v. Republic–Franklin Ins. Co.* (1988), 39 Ohio St.3d 71, 529 N.E.2d 464.

▬ Appellant asserts that the trial judge precluded appellant from requesting jury instructions or interrogatories as to the issue of whether appellee was a "confidential or policy making" employee. The trial judge ruled that this case was not preempted by the LMRDA because the court of appeals must have so decided in the previous appeal, *Young v. Internatl. Bhd. of Locomotive Engineers* (June 24, 1993), Cuyahoga App. No. 62771, unreported, 1993 WL 227069, and because *Finnegan* did not require preemption. The trial judge did not prohibit appellant from requesting any jury instructions or interrogatories.

Appellant cannot claim as error the court's omission of a jury instruction on this issue because appellant never requested such an instruction. *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 24 O.O.3d 316, 436 N.E.2d 1001. Failure to give such an instruction was not plain error, because it is not clear that but for the error, the result of the trial would have been otherwise. *State v. Bock* (1984), 16 Ohio App.3d 146, 16 OBR 154, 474 N.E.2d 1228. Absent an interrogatory on this issue, we must assume the jury decided consistently with the verdict, deciding the plaintiff was not a confidential or policy-making employee.

Appellant claims that the preemption issue is one of subject matter jurisdiction, which cannot be waived, but can be raised for the first time on appeal. *In re Byard* (1995), 74 Ohio St.3d 294, 296, 658 N.E.2d 735, 737. Appellant did raise the preemption issue at trial. However, absent a factual determination on the record as to whether appellant was a "policy-making or confidential" employee,

we cannot say whether the trial court erred in failing to hold that this case was preempted by federal law.

Accordingly, this assignment of error is overruled.

## II

Appellant's second assignment of error states:

■ "The trial court erred in failing to instruct the jury fully and completely on the apparent authority issue."

The court's instructions on apparent authority was as follows:

"Apparent authority occurs when a person dealing with an agent acting outside the scope of his authority reasonably believes the agent's conduct to be within scope of the authority due to the conduct of the principal.

" * * *

"In order to find apparent authority, two facts must be established. One, that the principal held the agent out as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having some authority, and two, that the person dealing with the agent knew of the facts, and acting in good faith, had reason to believe and did believe that the agent possessed the necessary authority."

Appellant contends that this instruction is incomplete and misleading, because it does not clarify that a subjective belief of the person dealing with the agent is not sufficient. The test is whether appellee, acting as a reasonable person, would believe the agent had authority, based on all the circumstances. *Shaffer v. Maier* (1994), 68 Ohio St.3d 416, 419, 627 N.E.2d 986, 988; *Blackwell v. Internatl. Union, U.A.W.* (1983), 9 Ohio App.3d 179, 182, 9 OBR 289, 292, 458 N.E.2d 1272, 1275. The instructions stated that the person dealing with the agent must have a reasonable belief that the agent had authority, conveying the objective standard requirement. The instruction was in accordance with law, and not incomplete. See *Shaffer* and *Blackwell, supra.*

Accordingly, this assignment of error is overruled.

## III

Appellant's third assignment of error states:

■ "The judgment is against the manifest weight of evidence and is contrary to law."

The judgment was not against the manifest weight of evidence if there was some competent, credible evidence from which the jury could conclude that

Sytsma had actual or apparent authority to make the contract, or that the union ratified the contract. See *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273.

■■ Actual authority includes not only authority expressly granted by the principal, but implied authority. *Young v. Internatl. Bhd. of Locomotive Engineers* (June 24, 1993), Cuyahoga App. No. 62771, unreported, 1993 WL 227069, citing *Damon's Missouri Inc. v. Davis* (1992), 63 Ohio St.3d 605, 608, 590 N.E.2d 254, 257. Implied authority is the power to do that which is reasonably necessary to carry into effect the power actually conferred, except as expressly limited by the principal. *Id.* In this case, the president had authority over administrative matters, employment decisions, and could execute long-term contracts. From these facts, a jury could conclude that Sytsma had implied authority to execute long-term employment contracts. The evidence does not compel a conclusion that Sytsma did not execute the contract until after the convention of delegates was in session.

As for apparent authority, a reasonable jury could also find that appellee reasonably believed that Sytsma had the authority to make the contract, based upon the conduct of the union. See *Young; Blackwell.* The union held Sytsma out as being responsible for all employment matters, and permitted Sytsma to enter into long-term contracts in nonemployment matters. The jury could find appellee reasonably believed that Sytsma had the authority to enter into the employment contract.

There is some evidence that the union ratified the contract. Ratification may be implied when there is actual knowledge of an agreement, acceptance of its benefits and a failure to repudiate within a reasonable time. *Young, supra; Campbell v. Hospitality Motor Inns* (1986), 24 Ohio St.3d 54, 24 OBR 135, 493 N.E.2d 239; *Ameritrust Co. v. Hicks Dev. Corp.* (1993), 91 Ohio App.3d 377, 382, 632 N.E.2d 939, 942. Rinehart testified that the union officials had knowledge of the contract in September 1986. Additionally, the Chattman law firm could be found to be an agent of the union, so that knowledge could be imputed to the union. *Young, supra.* The union leadership accepted the benefits of the contract, *i.e.,* appellee's continued employment, until 1989. The union did not repudiate the contract for three years. The jury could conclude that the union ratified the employment contract.

There was sufficient evidence supporting the verdict.

Accordingly, this assignment of error is overruled.

IV

Appellant's fourth assignment of error states:

■ "The trial court erred in excluding certain evidence concerning the federal lawsuit pending against Sytsma when the subject contracts were made."

The trial court allowed testimony that a lawsuit had been filed against Sytsma in federal court for misuse of union funds. Also in evidence was the fact that an election to recall Sytsma took place in 1984, which Sytsma won by a narrow margin. Details of the allegations in the complaint filed in the federal case and details of the settlement of that case were excluded from evidence. The allegations were that Sytsma used union funds to fight the recall campaign, and took unauthorized vacation pay.

Appellant asserts that the excluded evidence would establish that appellee did not hold a reasonable belief that Sytsma had the authority to make the employment contract. Although this evidence was arguably relevant to this issue, the trial court properly excluded evidence of the allegations in another lawsuit because of the "danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A).

Accordingly, this assignment of error is overruled.

V

Appellant's fifth assignment of error states:

■ "The trial court erred in finding valid the purported liquidated damages clause, and in denying defendant the right to present evidence in mitigation of damages."

■ A liquidated damages clause will not be enforced if it is so disproportionate to anticipated damages that it amounts to a penalty. *Lake Ridge Academy v. Carney* (1993), 66 Ohio St.3d 376, 380, 613 N.E.2d 183, 186; *Samson Sales, Inc. v. Honeywell, Inc.* (1984), 12 Ohio St.3d 27, 12 OBR 23, 465 N.E.2d 392. A liquidated damages clause is enforceable and not a penalty if the damages would be "(1) uncertain as to amount and difficult of proof, and if (2) the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties, and if (3) the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof." *Lake Ridge Academy*, 66 Ohio St.3d at 382, 613 N.E.2d at 188.

In this case, the amount of future wages and benefits that would be earned by appellee is uncertain and difficult to prove. Appellee earned $40,000 plus benefits when the contract was made in 1986, and $48,000 plus benefits when she was terminated in 1989. The amount of liquidated damages was not disproportionate

compared to anticipated damages. The contract as a whole was not unreasonable. The contract was not unconscionable, because the union did not have inferior bargaining power, and the union's agent, Sytsma, was fully aware of the terms of the contract. The language of the contract clearly states that it was the intention of the parties to provide for liquidated damages in the specified amount. The liquidated damages provision in appellee's employment contract is not a penalty and should be enforced.

Appellant contends that the amount appellee earned at other jobs after she was discharged should be subtracted from the liquidated damages. Mitigation is not proper when there is a valid liquidated damages clause. *Lake Ridge Academy, supra,* 66 Ohio St.3d at 385, 613 N.E.2d at 190. The trial court did not err in excluding mitigating evidence or in finding the liquidated damages clause valid.

Accordingly, this assignment of error is overruled.

## VI

Appellant's sixth assignment of error states:

"The trial court erred in granting plaintiff prejudgment interest, both as to entitlement thereto, and amount thereof."

Appellant asserts that the parties were in dispute as to the amount of the contract, so the damages were not "liquidated" and prejudgment interest was not proper. See *Mahon–Evans Realty, Inc. v. Spike* (1986), 33 Ohio App.3d 268, 515 N.E.2d 953. Appellant argued at trial that the liquidated damages clause was invalid, that mitigation of damages should be considered and that the contract said $50,000 was payable each year, not as a lump sum. We believe the amount of damages was capable of ascertainment by the clear language of the contract, so prejudgment interest was proper. See *Stephen's Jewelry, Inc. v. Admiral Ins. Co.* (1989), 63 Ohio App.3d 213, 578 N.E.2d 520.

Moreover, the Supreme Court of Ohio did away with the liquidated/unliquidated distinction in a case involving contract damages payable by the state. *Royal Elec. Constr. Corp. v. Ohio State Univ.* (1995), 73 Ohio St.3d 110, 652 N.E.2d 687. Appellant argues that *Royal Elec.* only applies to cases against the state. *Royal Elec.* was based in part on R.C. 2743.18(A), which states that prejudgment interest *shall* be allowed in suits against the state. However, the Supreme Court also stated that the original decision creating the liquidated/unliquidated rule was not based on any rationale, policy reasons or precedent. See *Braverman v. Spriggs* (1980), 68 Ohio App.2d 58, 22 O.O.3d 47, 426 N.E.2d 526. The court noted the confusion created by the liquidated/unliquidated distinction, and held that prejudgment interest should be allowed when needed to fully compensate a party. The *Royal Elec.* decision was applied to a case involving private parties in

*Cincinnati Ins. Co. v. Continental Cas. Co.* (Dec. 6, 1995), Hamilton App. Nos. C–940884 and C–940890, unreported, 1995 WL 714262.

 We agree that *Royal Elec.* should apply to suits involving private parties. Appellee was entitled to prejudgment interest in order to be fully compensated for appellant's breach of the employment contract.

Appellant contends that the amount of the prejudgment interest award was incorrect because the contract provided $50,000 to become due and payable each year. We find that the plain language of the contract indicates that a lump sum of the total of $50,000 for each year remaining on the contract was due upon breach of the contract. The trial court did not err in determining the amount of prejudgment interest.

Accordingly, this assignment of error is overruled.

The decision of the trial court is affirmed.

*Judgment affirmed.*

SPELLACY, C.J., and O'DONNELL, J., concur.