In this case, Appellant, Board of Education of the Huber Heights City School District (School Board) appeals from a trial court decision reducing the market value, for tax purposes, of property belonging to Appellee, R.G. Real Estate Holding, Inc. (R.G.). As its single assignment of error, the School Board claims that the lower court erred in finding that the affidavit of Raymond C. Frye was competent and probative evidence of the true market value of R.G.'s property.
The property that is the subject of this appeal is located on Brandt Pike in Huber Heights, Ohio, and is a shopping center known as the Goldman Center. The Goldman Center was one of two parcels of land held by the Capital Facilities Liquidating Trust, which was administered by Huntington Bank. The terms of the trust required the trustee to sell all trust assets and to distribute the proceeds to the shareholders. In an effort to comply with the trust terms, Huntington Bank listed the Goldman Center at a purchase price of $900,000.00 in 1991, and continued the listing until the Fall of 1993. During that time, no offers were received, due to the Center's declining condition and lack of long-term leasehold interests. Consequently, Huntington Bank contacted an auctioneer. However, before the property was placed for auction, the Bank asked the principal shareholders of the trust for alternative suggestions. Two of the shareholders then offered to purchase the real estate for $475,000.00. This price was based on the auctioneer's estimate of what the trust would receive from an auction after adjustment for expenses. At the time, the Center was more than 50% vacant and the trust had a lack of positive cash flow.
The Center was then sold on December 21, 1993, for $475,000.00 to the shareholders, and the property and leases were conveyed to R.G., which was apparently a holding company for the shareholders. Subsequently, on March 31, 1994, R.G. filed a complaint with the Montgomery County Board of Revision (BOR), asking that the true value of the Center be reduced to $475,000.00 for the tax year 1993. In response, the School Board filed a counter-complaint, contending that the Center's true value should remain at the 1993 assessed amount of $1,841,510.00. Hearings on the complaint and counter-complaint were held by the BOR on September 24, 1996. Because the attorney for R.G. did not arrive when scheduled, the counter-complaint was heard first. At this hearing, the School Board did not present any evidence, but simply asked the BOR to take notice that the same sale between the trust and its shareholders had previously been found not to be an arms-length transaction. When the complaint was heard later that same day, R.G. did not present witnesses, but did give the BOR affidavits from Michael Goellnitz, the Vice-President from Huntington who had administered the trust, and Raymond Frye, a licensed realtor who had attempted to sell the Center between 1991 and 1993. Also submitted was a letter from Allan Johnston, the Director of Appraisals for J. R. Remick.
Goellnitz' affidavit outlined the facts surrounding the sale of the Center in December, 1993, and Frye's affidavit stated that the value of the property as of January 1, 1993, was no more than $750,000.00. The letter from Johnson discussed three different methods of valuation and concluded that the value of the property as of February 18, 1993 (the date of the letter), was one million dollars. Also given to the BOR was an income statement for the year 1993, which reflected a $20,000.00 loss on the property due to a gap between rental income and expenses for the Center. After receiving this evidence, the Chairman of the BOR indicated that the Board would review the material and would contact the attorney for R.G. if any questions arose about the information submitted.
No further proceedings took place, and the BOR then issued a decision on October 22, 1996, fixing the value of the property at $1,400,000.00. Subsequently, R.G. appealed to the Common Pleas Court. The matter was referred to a Magistrate, who did not hold a hearing, but considered the matter on the written materials submitted by the parties. Essentially, R.G. filed the same documents previously given to the BOR. However, the Montgomery County Auditor and Treasurer (who were now parties aligned with the School Board), presented additional evidence. Included in their evidence was an exclusive right to sell contract between Huntington Bank and RFC Properties, allowing RFC to list the Center at a asking price of $1.2 Million. This contract was dated April 19, 1993, and expired on July 19, 1993. Also included were pages 3, 4, 10, and 16 from a 1995 hearing before the BOR. While the identity of the speaker in the attached pages of the transcript is unclear, the speaker appears to be either Don or Pat Kelley, both of whom were real estate appraisers and were present at the hearing. In the excerpt, the speaker relates a hearsay comment from an attorney representing Huntington Bank, who apparently felt the sale to the principal shareholders was not an arms-length transaction. Finally, also given to the lower court was an appraisal from the Kelleys, indicating that as of January 1, 1994, the fair market value of the Center was $1,400,000.00.
After reviewing the evidence, the Magistrate first found that the sale in 1993 was not an arms-length transaction. The Magistrate then concluded that she could not use either the Johnston or Kelley appraisals because their opinions were not given as to the value of the property on the tax lien date, i.e., January 1, 1993. Ultimately, she decided the most relevant evidence was the opinion of Raymond Frye, who had valued the property at no more than $750,000.00 as of the appropriate tax lien date. As a result, the Magistrate amended the decision of the BOR to reflect a true market value of $750,000.00 for the Center on January 1, 1993. No objections were filed to the Magistrate's Decision, and the trial judge subsequently adopted the decision. The School Board then filed a timely appeal with our court.
As we noted above, the School Board claims the Magistrate erred in relying on the Frye affidavit to determine the true value of the shopping center. However, we are precluded from considering challenges to Frye's affidavit because no objections were filed to the Magistrate's report. As a result, the School Board has waived the right to contest either the factual or legal findings of the trial court.
In this context, Civ. R. 53(E)(3)(b), as amended effective July 1, 1995, provides that:
 Objections shall be specific and state with particularity the grounds of objection. If the parties stipulate in writing that the magistrate's findings of fact shall be final, they may object only to errors of law in the magistrate's decision. Any objection to a finding of fact shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that fact or an affidavit of that evidence if a transcript is not available. A party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule.
Based on this unambiguous amendment to Rule 53, we conclude that a party's failure to object to a magistrate's report prevents us from considering error in the lower court decision. The only exception would be in situations involving plain error. For example, plain error has been applied as an exception to the requirement under Civ. R. 51 that specific objections to instructions must be made at trial or the error is waived on appeal. See, e.g., Yeazel v. Brown, (February 23, 1996), Montgomery App. No. 15347, unreported; Young v. Intern.Brotherhood of Locomotive Engineers (1996), 114 Ohio App.3d 499,505; and Doyle v. Fairfield Machine Co., Inc. (May 2, 1997), Trumbull App. No. 96-T-5488, unreported (all discussing plain error exception to Civ. R. 51 waiver). Because Civ. R. 51 is nearly identical in all pertinent respects to Civ. R. 53(E)(3)(b), we believe plain error may likewise be applied as an exception to Rule 53 waiver. However, that does not end the inquiry, since we must also decide if the circumstances of the present case merit the use of the doctrine.
Recently, the Ohio Supreme Court commented as follows about the plain error doctrine:
 In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.
Goldfuss v. Davidson (1997), 79 Ohio St.3d 116. After comparing the present case to Goldfuss, we cannot justify the use of plain error to overcome the School Board's failure to file objections under Civ. R. 53. In Goldfuss, the Supreme Court found that plain error did not apply where a party had failed to preserve error by asserting the defense of primary assumption of the risk in the pleadings or by asking for an instruction at trial on primary assumption of the risk. Instead, the defendant raised this issue only after an adverse jury verdict on negligence and comparative negligence. In reversing the appellate decision, which had relied on plain error, the Supreme Court stressed that "[it is doubtful that] the public's confidence in the jury system is undermined by requiring parties to live with the results of errors that they invited, even if the errors go to `crucial matters.'" Id. at 121 (citation omitted). Additionally, the court emphasized that "[t]he plain error doctrine should never be applied to reverse a civil judgment simply because a reviewing court disagrees with the result obtained in the trial court, or to allow litigation of issues which could easily have been raised and determined in the initial trial." Id. at 122.
As Goldfuss makes clear, plain error is to be used very sparingly and would not be warranted in the absence of circumstances raising something more than a mere failure to object. Compare, Gregg v. Phillips (March 29, 1995), Montgomery App. No. 14441, unreported (finding plain error where the failure to object to a magistrate's report appeared to be based on a mutual misunderstanding of the court and the parties about whether a further hearing would be scheduled). By contrast, the present case involves only a failure to object and does not include circumstances seriously affecting "the basic fairness, integrity, or public reputation of the judicial process."
Based on the preceding discussion, the School Board's single assignment of error is overruled and the judgment of the trial court is affirmed.
YOUNG, P.J., and WOLFF, J., concur.
Copies mailed to:
Theodore G. Gudorf
Michael Russell
Jeffrey A. Rich
Hon. Dennis Langer