OPINIONS OF THE SUPREME COURT OF OHIO

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Deborah J. Barrett, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

Shaffer, Executor of Estate of Hutton, Appellant, v. Maier, d.b.a. Anthony Maier Enterprises, Inc.; Standard Oil Company, Appellee.

[Cite as Shaffer v. Maier (1994), -- Ohio St.3d ---.]

Civil procedure -- Trials -- Verdicts -- Interrogatories -- Civ.R. 49(B), applied.

(No. 92-198 -- Submitted February 16, 1993 -- Decided March 9, 1994.)

Appeal from the Court of Appeals for Hamilton County, Nos. C-900573 and C-900600.

This case arises out of the wrongful death claim brought by the estate of James A. Hutton. On June 20, 1984, the Cessna 340 aircraft that Hutton was piloting crashed soon after taking off from Cincinnati's Lunken Airport, killing Hutton, his wife, and two passengers. Immediately prior to takeoff, Hutton's propeller-powered plane had been negligently misfueled with jet fuel by employees of Anthony Maier Enterprises, Inc. ("Maier"), Lunken's Sohio fuel dealer. That misfueling caused the crash.

The chain of events leading to the fatal accident began in 1981, when Maier, one of four dealers selling aviation fuel at Lunken, began selling fuel produced by defendant-appellee, Standard Oil of Ohio ("Sohio"). Sohio provided Maier with free Sohio paints and Sohio logos to display on Maier's trucks. Sohio allowed Maier to place a large Sohio sign outside Maier's premises, and may have furnished the sign free of charge. Sohio also authorized Maier to accept Sohio credit cards. While Sohio did not own or control Maier or its operations, it did inspect Maier's fuel storage facilities to ensure the integrity of Sohio's product.

As Hutton flew south from his home in Bryan, Ohio, on the day of the accident, he contacted the Lunken control tower by radio and specifically asked whether there was a Sohio dealer at the airport. Hutton carried a Sohio charge card. The tower referred Hutton to Maier, and gave him the dealership's radio frequency.

Hutton reached Maier by radio and arranged for refueling. Immediately upon landing, Hutton and his wife got out of the plane and walked away for a short time, and may not have seen

Maier's employees as they were making their fatal fueling mistake. By the time the Huttons returned, the jet fuel truck had been moved back to its original position next to Maier's other aviation fuel truck on a nearby ramp. Hutton charged his gas purchase, signed a receipt which displayed the Sohio logo in addition to the name "Maier Enterprises," and took off. The plane crashed shortly thereafter.

At trial, Maier was found negligent as a matter of law by virtue of its improper fueling of the plane. The question that the jury faced was whether Sohio could also be found liable. The trial court granted Sohio directed verdicts on Shaffer's claims of express agency, implied agency and negligent entrustment. Shaffer's claims of apparent agency and negligent hiring survived to go to the jury.

The jury returned a general verdict in favor of Sohio. However, the jury was presented with several interrogatories in addition to the general verdict form. The second interrogatory read as follows:

"Did Sohio allow Maier to act as its apparent agent for the purpose of selling and dispensing Sohio aviation fuels?"

The jury responded affirmatively. The trial court found that the jury's answer to the second interrogatory was inconsistent and irreconcilable with the general verdict, and thus conformed the general verdict to the interrogatory answer pursuant to Civ. R. 49. Sohio thus became liable to Shaffer for $5,904,641.30. Sohio appealed.

The Court of Appeals for Hamilton County reinstated the jury's general verdict for Sohio, and reversed the trial court's entry of judgment for Shaffer. In so doing, the court of appeals concluded that Sohio was entitled to judgment as a matter of law on the theory of apparent agency, and that the trial court's denial of Sohio's motion for directed verdict was improper. The appellate court also decided that the jury's response to the second interrogatory was not inconsistent and irreconcilable with the general verdict, and thus reinstated the jury's verdict for Sohio. The appellate court reasoned that the interrogatory considered only one prong of a multi-part test to determine apparent agency, and that just because the jury was convinced that the evidence proved one prong did not mean that it believed all the elements were proved. Therefore, the appellate court ruled that the interrogatory answer and the general verdict were, in fact, reconcilable.

Shaffer appealed. The cause is now before this court pursuant to the allowance of a motion to certify the record.

Kreindler & Kreindler, Marc S. Moller and David L. Fiol, for appellant.

Squire, Sanders & Dempsey, Robin G. Weaver and James W. Satola, for appellee.

Pfeifer, J. Before we determine what relation the jury's general verdict had to its responses to the jury interrogatories, we must first determine whether the issue of apparent agency between Maier and Sohio was properly before the jury. To establish liability premised upon apparent agency, a plaintiff must show that (1) the defendant made representations

leading the plaintiff to reasonably believe that the wrongdoer was operating as an agent under the defendant's authority, and (2) the plaintiff was thereby induced to rely upon the ostensible agency relationship to his detriment. See Johnson v. Wagner Provision Co.(1943), 141 Ohio St. 584, 26 O.O.161, 49 N.E.2d 925, paragraph four of the syllabus.  Simply stated, there is a "holding out" of the agent as such to the public by the principal and a reliance on that holding out by the plaintiff.  The appellate court held that as a matter of law the mere provision of corporate logos or authorization of credit card purchases does not constitute a holding out, and that Sohio was thus entitled to a directed verdict.  We disagree.

The court of appeals based its decision on the "common knowledge" rule.  Other jurisdictions have held in automotive service station cases that it is a matter of common knowledge that "trademark signs are displayed throughout the country by independent dealers." Reynolds v. Skelly Oil Co. (1939) 227 Iowa 163, 171, 287 N.W. 823, 827.  The argument seems to be that since everyone knows that service stations are independently owned and operated that the use of national-brand logos and credit cards cannot constitute a holding out of the agent as such by the principal.  That assumed depth of the general public's knowledge of franchise law seems dubious even in automotive service station cases.  Still, even if we were to apply the common-knowledge rule to automotive cases, we do not agree with the appellate court that automobile fuel distribution and airplane fuel distribution are sufficiently related to merit the application of the common-knowledge rule regarding trademark signs to the aviation fuel sales industry.

For the vast majority of Americans, automobiles are an everyday part of life.  Those of us who do not drive at least encounter automobiles daily, and most people know the location of the nearest gas station to their home.  On the other hand, most people will never be exposed to their local aviation fuel dealer.  A small percentage of persons own an airplane or have a pilot's license.  Concomitantly, there are comparatively very few aviation fuel dealers.  The low level of contact between the general public and aviation fuel dealers does not support the claim that it is a matter of common knowledge that they are independently operated.

Therefore, the appellate court erred in finding that Shaffer's claim of apparent agency was insufficient as a matter of law.  The question was properly before the jury.

We must now determine whether the trial court's conforming  of the jury's general verdict to its interrogatory answer was proper.  Neither party disputes as improper the charge to the jury on apparent agency:

"Now, on the apparent agency theory of recovery, an apparent agency arises in the absence of express or implied authority, where one person, by his acts, words or conduct, causes another party to believe that authority has been given to an agent to act on his behalf.

"Such authority cannot be proven or shown solely by the acts of the agent, but must be based on acts, words, conduct or knowledge by the employer.  The employer is responsible only for such appearance of authority as was caused or permitted by

the employer itself.

"To hold the employer responsible because of apparent authority, it is necessary that the injured party use the care of a reasonably prudent person.

"He must prove that the acts or the conduct of the employer gave him reason to believe that the agent had been given authority by the employer and that he relied on such authority in good faith.

"Apparent authority does not arise if the injured party suspects or has reason to suspect a lack of authority or the existence of some mistake.

"In order for you to find that Maier was the apparent agen[t] of Sohio, it will be necessary for you to find that:

"(1) There were acts or omissions by Sohio,

"(2) James Hutton, knowing the facts and acting in good faith and as a reasonably prudent man, believed such authority existed in Maier, and

"(3) James Hutton acted in reliance on this apparent agency to his detriment."

The key question in this case is whether the second interrogatory, referring to apparent agency, concerned only one part of the court-enunciated test, or whether it answered the entire question of whether Maier was the apparent agent of Sohio. Looking at the interrogatory semantically and considering its context in the trial, we are convinced that the jury meant to treat the entire apparent-agency issue in responding to the second interrogatory.

Again, the second interrogatory reads:

"Did Sohio allow Maier to act as its apparent agent for the purpose of selling and dispensing Sohio aviation fuels?"

The interrogatory is imperfect. The interrogatory simply should have asked whether Maier was Sohio's apparent agent. Still, that shorter question is contained in the longer one. Also, the most important thing is the implications that go along with the jury's interrogatory answer.

The jury found that Sohio did allow Maier to act as its apparent agent. The jury did not say that Sohio had simply allowed Maier to use its logo or its credit card receipts. The jury said that Sohio allowed Maier to act as its "apparent agent," which was defined in the jury instructions as including acts by Sohio and reliance and injury by Hutton. If the jury did not believe that Maier was the apparent agent of Sohio, the jury could not have responded "yes" to the second interrogatory. The question is phrased such that one must first accept the premise that Maier was an apparent agent before finding that Sohio allowed that apparent agency. The issue of allowance is superfluous, but the question as phrased does show that the jury accepted the fact that Maier was Sohio's apparent agent.

If the jury had answered negatively, then there could have been some confusion as to whether they were responding to the "allow" portion of the interrogatory or the apparent agency question. The "yes" response can mean only one thing -- that the jury believed that Maier was Sohio's apparent agent.

That "yes" response is indeed irreconcilable and inconsistent with the jury's general verdict in Sohio's favor. Sohio cannot be Maier's apparent principal and yet not be

liable.  However, while inconsistent, the jury's actions are understandable.  The misunderstanding is traceable to the jury instructions, specifically the portion of the instructions setting forth Shaffer's theories of recovery.  The court gave the following instructions:

"Now, ladies and gentlemen, recovery by the plaintiffs is sought on one of several theories.

"One: On the theory that Maier, while acting as the apparent agent for Sohio, was negligent.

"Two: On the theory that Sohio, in employing Maier, was negligent in failing to select or employ a competent and careful independent contractor to sell its aviation fuel.

"Three: On the theory that Sohio, in employing Maier as an independent contractor, was negligent in failing to recognize that the sale and resale of aviation fuel was likely to create a peculiar, unreasonable risk of physical harm unless special precautions were taken, and further, was negligent in failing to provide in a contract or otherwise that Maier take such precautions." (Emphasis added.)

The second and third theories implicate Sohio directly.  It is Sohio's active negligence that is at issue under those two theories.  Under the first theory, Maier's negligence is the focus, with Maier's relationship with Sohio as a side issue.  Thus, it is quite conceivable that the jury's general verdict for Sohio was based upon those claims which the jury believed implicated Sohio directly.

The interrogatories were structured in a way that mirrored the court's presentation of the theories of liability.  The first two interrogatories concerned Maier's negligence directly.  The first asks whether Maier's negligence proximately caused Hutton's death.  The second interrogatory does not regard Sohio's negligence directly, but rather deals with Sohio's relationship with Maier.  Interrogatories three and four deal with whether Sohio employed Maier as an independent contractor and, if so, whether Sohio was negligent in so hiring.  Interrogatories five and six concern unreasonable risk in airplane refueling and whether Sohio was negligent in not requiring Maier to take special precautions.

The jury answered all the interrogatories regarding Sohio's direct negligence in favor of Sohio.  Thus, it is at least understandable that the jury returned a general verdict in Sohio's favor.  The fact that Sohio is liable to Shaffer only because of its relationship with Maier and not because of anything Sohio actively did easily explains how the jury could make such an error.

It is clear that the jury made an error in returning its general verdict for Sohio.  Pursuant to Civ. R. 49(B), "[w]hen one or more of the [interrogatory] answers is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial."  The trial judge in this case decided to enter judgment in accordance with the interrogatory answers.

Still, given the conflict between the interrogatories and the general verdict, the clear, best choice was to send the jury back for further deliberations.  But the trial judge could

not do that in this case. The judge's determination that the answer to the second interrogatory was inconsistent with the general verdict and that judgment should be entered in accordance with the interrogatory answer was made by entry on June 6, 1989. That entry followed a motion by Sohio for judgment on the general verdict. The jury had returned their verdict and interrogatory answers more than six months previously, on November 23, 1988. Thus, the trial judge did not have the best option under Civ. R. 49 (B), further jury deliberations, available to him.

The remaining options available to the trial judge were to enter judgment in accordance with the interrogatory answer or to order a new trial. The loss of the third option was too significant for the trial court to ignore, and prevented a legal determination consistent with Civ. R. 49(B).

The trial judge was charged with achieving a legal result. Since a determination legally consistent with Civ. R. 49(B) could not be achieved, the situation as it now confronts us demands an equitable result. To simply order a new trial affords no better result than allowing the interrogatories to control -- they are equals under Civ. R. 49 (B). Thus, in this extraordinary case, we enter the following judgment.

Shaffer shall be given thirty days from the announcement of this decision to notify the trial court and defendant Sohio of his choice of two options. First, Shaffer may decide to let the trial court's judgment in its favor stand, but also accept a fifty percent remittitur of the damages awarded against Sohio. Alternatively, Shaffer may choose to retry the case. Should Shaffer choose to retry, the only issue to be tried will be that of Sohio's liability based upon apparent agency.

Judgment accordingly.

A.W. Sweeney, Douglas and F.E. Sweeney, JJ., concur.

Moyer, C.J., Wright and Ford, JJ., dissent.

Donald R. Ford, J., of the Eleventh Appellate District, sitting for Resnick, J.

Wright, J., dissenting. I concur in Judge Ford's well-reasoned dissent which would affirm the court of appeals. Some additional comment is appropriate in light of the novel, seemingly incomprehensible approach adopted by the majority in dealing with this admittedly difficult case.

In the case before us the majority readily concedes that prejudicial error was accomplished when the trial court could not abide by Civ.R. 49(B). The trial court patently had a duty to try to resolve the seeming disparity between the verdict for the defendant and the answer to an "imperfectly" drafted interrogatory that the majority finds in conflict with that verdict. The trial court ignored the objections of defendant. The plaintiff likewise recognized a possible conflict. Despite the objections, the trial court dismissed the jury.

Historically, remittitur has been used without exception to reduce damage verdicts which were excessive or motivated by passion and prejudice. The majority uses this expedient despite the fact that the amount of damages was not in question here or in the court of appeals. There is absolutely no precedent for this tool of dispute resolution in this context. There is no rule of law expounded here aside from what can charitably be referred to as the "Rule of Four." At an

absolute maximum, a new trial should be ordered.

Ford, J., dissenting. While I agree with the majority's treatment of the common-knowledge rule, I respectfully dissent to the remainder of its opinion because it fails to apply well-established case law on the dispositive issue in this matter: that is, whether the jury's response to the second interrogatory, as submitted to it, is inconsistent and irreconcilable with the general verdict.

The primary purpose of a special interrogatory is to test the thinking of the jury. See Staff Note to Civ.R. 49. When a jury's response to a special interrogatory is consistent with its general verdict, the general verdict must prevail; conversely, when a jury's response to an interrogatory is inconsistent with its general verdict, the trial court may enter judgment notwithstanding the general verdict. Civ.R. 49(B).

This court has said that "'[j]udgment should not be rendered on special findings of fact as against the general verdict unless such special findings *** are inconsistent and irreconcilable with the general verdict.' (Emphasis added.)" Becker v. BancOhio Natl. Bank (1985), 17 Ohio St. 3d 158, 160, 17 OBR 360, 361, 478 N.E.2d 776, 778-779, quoting Prendergast v. Ginsburg (1928), 119 Ohio St. 360, 164 N.E. 345, paragraph one of the syllabus. Moreover, this court has regularly statedthat the law "*** does not require a prevailing party to prove consistency between the verdict and a special finding. Rather, the law makes it incumbent upon a party challenging a general verdict to show that the 'special findings, when considered together, are inconsistent and irreconcilable with the general verdict.'" (Emphasis sic.) Becker at 162-163, 17 OBR at 363, 478 N.E. 2d at 781; see, also, Pendergast, supra; Hogan v. Finch (1966), 8 Ohio St. 2d 31, 37 O.O. 2d 305, 222 N.E.2d 633.

When an interrogatory is susceptible to two different meanings, "[i]f it is reasonably possible so to do, special findings *** must be harmonized with [the jury's] general verdict." (Emphasis added.) Klever v. Reid Bros. Express, Inc. (1949), 151 Ohio St. 467, 474, 39 O.O. 280, 283, 86 N.E. 2d 608, 612. Such is the case because when an interrogatory is susceptible to two possible but different meanings, one of which renders the jury's response as being consistent with the general verdict, the other of which renders its response as being inconsistent with the general verdict, the party challenging the general verdict fails to clearly show an inconsistency. Thus, from the foregoing it is unequivocal that only if it is impossible to read the second interrogatory as being consistent with the general verdict is it correct to enter judgment on such interrogatory.

The jury was instructed that in order to find for appellant on an agency by estoppel theory, it must find that:

"(1) There were acts or omissions by Sohio,

"(2) James Hutton, knowing, the facts and acting in good faith and as a reasonably prudent man, believed such authority existed in Maier, and

"(3) James Hutton acted on this apparent agency to his detriment."

Given this predicate, we must decide whether it is possible to

construe an affirmative response to the second interrogatory, which reads: "Did Sohio allow Maier to act as its apparent agent for the purpose of selling and dispensing Sohio aviation fuels?," as being consistent with the general verdict.

The majority of the court of appeals concluded that the interrogatory, as drafted, "*** may be construed to test only the first element of the theory; that is, whether Sohio acted, either affirmatively or passively, regardless of whether Hutton could reasonably and as a matter of law have relied on the act or omission." Under this possible construction, the interrogatory did not test the remaining prongs of the conjunctive test for agency by estoppel: whether a reasonable person would have believed that an agency relationship existed based upon the presence of the Sohio logos, whether Hutton relied in good faith upon such overtures in making his refueling decision, and whether Hutton sustained injury due to his reliance.

It is rudimentary that, in order to satisfy a test stated in the conjunctive, all elements must be proven. It is possible that the jury's response to the second interrogatory establishes only that it believed that the first prong was satisfied. However, to establish inconsistency, appellant was required to demonstrate that all elements of the test were fulfilled. Because the interrogatory does not examine or demonstrate the jury's thinking on the other prongs, we must presume the jury found at least one prong to be unfulfilled. Thus, the jury's response to the second interrogatory is not inconsistent and irreconcilable with the general verdict.

Instead of attempting to read the second interrogatory as consistent with the general verdict, which time-honored law requires, the majority does the opposite. While conceding that the interrogatory submitted to the jury is less than perfect, the majority expends significant effort to develop an analysis which supports reading the interrogatory as being inconsistent with the general verdict. Specifically, the majority takes the interrogatory, drafted by appellant, which reads "[d]id Sohio allow Maier to act as its apparent agent for the purposes of selling and dispensing Sohio aviation fuels?," and redrafts it with some license in appellant's favor even though the meaning of an unartfully drafted interrogatory is to be resolved against the drafter. See Klever at 474, 39 O.O. at 283, 86 N.E.2d at 611. In so doing, the majority deems the word "allow" to be superfluous, despite the fact that, as previously stated, such language can be read as testing only the existence of the first of the four elements required to establish agency by estoppel. Only then is the majority convinced that the jury read the interrogatory as going to all of the elements of agency by estoppel rather than merely to the first prong.

While the majority advances one plausible reading of the second interrogatory, this writer, as well as anyone without telepathic powers, cannot be convinced that the jury edited and understood the interrogatory in the same manner. Moreover, as previously stated, when an interrogatory is susceptible of two different meanings, provided it is possible to construe it as being consistent, the general verdict must prevail. Thus, the majority would be on firmer terrain, under the facts of this case, to affirm the court to appeals' decision to reinstate the

jury's general verdict for the sole reason that appellant has failed to establish that the jury's response to the second interrogatory is inconsistent and irreconcilable with the general verdict.

In addition to my disagreement with the majority that the second interrogatory is inconsistent and irreconcilable with the general verdict, I also take umbrage with the majority's mandated remedy.

Civ. R. 49(B) states that when an interrogatory is inconsistent with the general verdict, "judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial." Instead of selecting one of the possible options provided, the majority crafts an additional option under the guise of equity. Specifically, it mandates that Shaffer may choose either a $2.5 million remittitur of the damages awarded or a new trial; however, such option is not available under the Civil Rules.

This course of action serves only to create confusion. One plausible interpretation of the majority's opinion is that the Civil Rules may be held in abeyance when the result obtaining appears arduous in a given case. One of the primary responsibilities of this court is to promote uniform application of the law, not parochialism. The majority's remedy defeats this manifest purpose and is not sanctioned by the Civil Rules. Thus, I also dissent to this portion of its opinion.

Moyer, C.J., and Wright, J., concur in the foregoing dissenting opinion.