[This opinion has been published in *Ohio Official Reports* at 87 Ohio St.3d 371.]

PEREZ, APPELLANT, *v*. FALLS FINANCIAL, INC. ET AL., APPELLEES.

[Cite as *Perez v. Falls Financial, Inc.*, 2000-Ohio-453.]

*Civil procedure—Trials—Verdicts—Trial judge's instructions to the jury regarding resolution of the inconsistencies between the interrogatory answers and general verdicts do not constitute plain error, when.*

(No. 98-1775—Submitted June 9, 1999—Decided January 5, 2000.)

APPEAL from the Court of Appeals for Summit County, Nos. 18334 and 18335.

————————————

{¶ 1} The jury in the underlying sexual discrimination case returned general verdicts and interrogatory answers that conflicted. The issue in this appeal is whether the trial judge's instructions to the jury regarding the resolution of the inconsistencies constituted plain error.

{¶ 2} Plaintiff-appellant, Peggy J. Perez, started working for appellee Falls Savings Bank ("FSB") in 1979. By early 1989, she had risen to the position of Senior Vice-President and Controller.

{¶ 3} Also in 1989, FSB converted from a mutual savings bank to a stock form of public ownership. In connection with the conversion, appellee Falls Financial, Inc. ("FFI"), a holding company, was formed. The holding company owned all the stock of FSB, and the stock of the company was then sold to the public. The directors of FSB were also the directors of FFI.

{¶ 4} FFI named Perez its Controller and Chief Accounting Officer in August 1989. In September 1989, FFI hired John Little as Chief Financial Officer of FFI and FSB. Little became Perez's supervisor. Eventually, Little decided to terminate Perez's employment. He asked Perez to resign and offered her a severance package, including the ability to exercise her stock options. Little told

Perez that if she did not resign, she would be terminated. Perez refused, and was terminated on June 19, 1992.

{¶ 5} On October 23, 1992, the FSB board of directors ratified Perez's termination as an employee of the bank and further removed her as Senior Vice-President. The board adopted a resolution that Perez's termination was for cause. The "for cause" termination meant that Perez could not exercise her stock options.

{¶ 6} Perez filed a complaint against FFI, FSB, and eleven officers and directors, alleging wrongful discharge and promissory estoppel, breach of a stock option agreement, sexual discrimination in the payment of salary and bonuses, sexual discrimination in hiring Little as Chief Financial Officer rather than promoting Perez, and discriminatory termination.

{¶ 7} The trial was bifurcated into liability and damages portions. The liability portion was tried to a jury beginning on April 16, 1996 and ending on April 30, 1996. The jury was presented with general verdict forms, separate forms for the plaintiff and defendants for each cause of action, and forty-five interrogatories that tracked the trial court's instructions.

{¶ 8} The jury returned verdicts for appellees on the counts of wrongful discharge and promissory estoppel, discriminatory salary payments, and discriminatory bonus payments. The jury returned general verdicts for Perez on the counts of breach of stock option agreement, discriminatory hiring, and discriminatory termination.

{¶ 9} The general verdicts for Perez on the issues of discriminatory hiring and discriminatory termination were at odds with interrogatory responses regarding those claims. The jury answered in interrogatories that Perez had failed to prove that FFI's articulated nondiscriminatory reason for hiring Little as Chief Financial Officer was a mere pretext for sexual discrimination. In another interrogatory, the jury determined that Perez failed to prove by a preponderance of the evidence that

FSB intentionally discriminated against Perez because of her sex in terminating her employment.

{¶ 10} Upon review of the interrogatory answers and general verdicts, the court conferred with counsel regarding the inconsistencies. The trial judge's instructions to the jury regarding the resolution of the inconsistencies are at the heart of this case. The court addressed the jury as follows:

"The interrogatories that you answer must be able to be reconciled with the general verdict or they must be consistent with the general verdict.

"In reviewing the verdict forms and the interrogatories, answers to the interrogatories with counsel, there appear to be two inconsistencies that I need to draw your attention to.

"And what you're going to have to do is consider these two inconsistencies, and go back in the jury room, and you must reconcile these two interrogatories with your general verdict form on that particular count.

"The inconsistencies are in reference to Count 5, Count 5-A and B. I want to turn first to the general verdict in reference to Count 5, which involves the discriminatory hiring of James Little. This verdict was for the plaintiff.

"The interrogatory in question that is not consistent is No. 36. It must be reconciled with your verdict form, which is for the plaintiff.

"Now, in order to properly put in perspective No. 36, I'm going to have to start reading the interrogatory at 34, so that you can put No. 36 in context.

"No. 34, the question that was posed, 'Did the plaintiff prove by the greater weight of the evidence that she was as qualified as James Little for the position of chief financial and accounting officer when he was hired in 1989?'

"Again, that was appropriately answered in terms of consistency.

"No. 35 was, 'If you answered the preceding interrogatory in the affirmative, did Falls Financial, Inc., and Falls Savings Bank state a legitimate and

non-discriminatory reason for the hiring of James Little for the position of chief financial and accounting officer in 1989?'

"Again, that was appropriately answered in terms of consistency with the general verdict.

"No. 36, 'If you answered the preceding interrogatory in the affirmative, did the plaintiff prove by the greater weight of the evidence that Falls Financial, Inc., and Falls Savings Bank's articulated reason for hiring James Little for the position of chief financial and accounting officer in 1989 was a mere pretext for sexual discrimination?'

"That was answered no. That interrogatory is not consistent with your general verdict for the plaintiff.

"The other inconsistency involves, again, Count 5. This is the second part, B, that involves the discriminatory termination of Peggy Perez.

"And the inconsistency between that general verdict is between that verdict and the answer contained to Interrogatory No. 43.

"The verdict form, as indicated previously in reference to Count 5, Part B, the discriminatory termination of Peggy Perez was returned in favor of the plaintiff.

"The answer to question No. 43 is inconsistent with that verdict.

"The question is: 'Did the plaintiff prove by the greater weight of the evidence that Falls Savings Bank intentionally discriminated against the plaintiff because of her sex relative to the termination of her employment?'

"The interrogatory is answered no, but the general verdict is in favor of the plaintiff. So that interrogatory must be reconciled with the general verdict form for the plaintiff.

"So the Court at this time is going to —

" * * *

4

"Ladies and gentlemen, the court is going to return you to the jury room specifically to answer those two questions posed to you by the Court in terms of trying to reconcile those two interrogatories with your verdict forms."

{¶ 11} Appellees did not object on the record to the reconciliation instruction. After further deliberations, the jury changed its interrogatory answers so that they conformed to the verdicts for the plaintiff. The appellees declined the trial court's offer to poll the jury.

{¶ 12} In the damages phase, the same jury awarded Perez $157,000 in back pay, $279,912 in front pay, and $250,000 in punitive damages on the discrimination claims. Following a hearing, the trial court awarded Perez $78,951 in prejudgment interest and assessed $224,642.46 in attorney fees and litigation expenses against appellees.

{¶ 13} Upon appeal by FSB and FFI, the appellate court found that although appellees had failed to object to the trial court's reconciliation instruction, the instruction constituted plain error and was thus reviewable. The court then found that the trial court "clearly implied" that the interrogatory answers were wrong. The court further found that "the trial court gave the jury no indication that it had the option of not changing its answers, and it clearly erred by steering the jury to choose its general verdicts over its interrogatory answers."

{¶ 14} The appellate court held that the interrogatory answers as originally submitted showed that the jury determined that Perez had failed to meet her burden of proof on both of her discrimination claims. The court vacated the general verdicts for Perez, and vacated all damages, interest, and fees associated therewith.

{¶ 15} The cause is before this court upon the allowance of a discretionary appeal.

_____

*John F. Norton; Davis & Young Co., L.P.A.,* and *Patrick F. Roche,* for appellant.

*Milisor & Nobil Co., L.P.A., Sue Marie Douglas, Keith L. Pryatel* and *Stephen C. Sutton*, for appellees.

_____

**PFEIFER, J.**

{¶ 16} We find that the facts of this case fail to reach the very high standard necessary to invoke the civil plain error doctrine set forth by this court in *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 679 N.E.2d 1099, syllabus.

{¶ 17} In *Goldfuss*, this court set forth the standard for the plain error doctrine as follows:

"In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself."

{¶ 18} Neither party argues that the trial judge abused her discretion in ordering the jury to further consider its general verdicts and interrogatory answers in this case. Civ.R. 49(B) states that "[w]hen one or more of the answers is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial." In *Shaffer v. Maier* (1994), 68 Ohio St.3d 416, 421, 627 N.E.2d 986, 990, a case with a conflicting general verdict and interrogatory response, this court stated that "the clear, best choice was to send the jury back for further deliberations."

{¶ 19} The trial judge certainly acted within her discretion in ordering the jury to deliberate further. This is not an instance where the judge simply entered judgment based on the verdict forms without regard to inconsistent interrogatory answers—in such an instance the plain error doctrine could be invoked. Here, the

6

appellate court found that the trial court steered the jury to choose its general verdicts over its interrogatory responses. The appellate court also held that "the trial court allowed the general verdict to control, thereby negating the purpose of special interrogatories."

{¶ 20} In reviewing the record, we do not see any clear evidence that the court was trying to exert undue influence on the deliberations of the jury. The trial court allowed the general verdicts to control the interrogatory answers because that is how the jury decided to reconcile them. The court of appeals noted that "the court referred to the general verdict 'for the plaintiff' five times while delivering the reconciliation instruction" and that "in the case of each inconsistent interrogatory, the court instructed the jury to reconcile the inconsistent interrogatory with the verdict 'for the plaintiff.' " We find the phrase "for the plaintiff" to be a mere descriptive phrase to describe the verdict that the judge was referencing and as a way of explaining why the interrogatory responses, which were contrary to the plaintiff, were inconsistent with the verdicts. At the outset and at the conclusion of her remarks to the jury, the trial judge made no reference to "for the plaintiff" language.

{¶ 21} The court's opening remarks were:

"The interrogatories that you answer must be able to be reconciled with the general verdict or they must be consistent with the general verdict.

"In reviewing the verdict forms and the interrogatories, answers to the interrogatories with counsel, there appear to be two inconsistencies that I need to draw your attention to.

"And what you're going to have to do is consider these two inconsistencies, and go back into the jury room, and you must reconcile these two interrogatories with your general verdict form on that particular count."

{¶ 22} The trial judge concluded her remarks to the jury by stating:

"Ladies and gentlemen, the Court is going to return you to the jury room specifically to answer those two questions posed to you by the court in terms of trying to reconcile those two interrogatories with your verdict forms."

{¶ 23} Even if appellees had objected to the reconciliation, it is less than clear that this court would find the instruction erroneous. In her final words to the jury, the judge speaks in terms of its "trying to reconcile" the interrogatory responses and the general verdicts. At no point did the judge instruct the jury that it could not change its general verdicts. "A jury charge must be considered as a whole and a reviewing court must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights." *Becker v. Lake Cty. Mem. Hosp. West* (1990), 53 Ohio St.3d 202, 208, 560 N.E.2d 165, 171. As a whole, it does not appear that the trial judge was trying to impose her will on the jurors.

{¶ 24} Certainly, the instruction could have been more artfully phrased. Instead of instructing the jury that the interrogatory responses must be reconciled with the general verdicts, the judge could have stated that the interrogatory responses and general verdicts should be reconciled with each other. The judge could have made it abundantly clear that one did not control over the other, but that the two should be harmonious.

{¶ 25} However, appellees did not object to the charge. And we were not in the courtroom. It may have been relatively obvious to the judge and to the parties that the jury had simply made a clerical error. Certainly, with a list of forty-five interrogatories, that is possible. The record does not reflect which jurors signed the interrogatory responses that were at odds with the general verdicts. Six of the eight jurors signed the relevant general verdict forms; if those same six jurors also signed the contradictory interrogatory responses, then a clerical error was likely. And that may be the reason that the appellees did not object at trial.

**{¶ 26}** Certainly, whatever error the trial judge may have made, we cannot say that it affected "the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss*, syllabus. To the contrary, the trial judge attempted to aid the integrity of the proceeding. She sought a consistency of result. The trial judge stood in the best position to achieve a fairness of result, and the lack of any objection points to the likelihood that she did achieve such a result. Rather than "challenging the legitimacy of the underlying judicial process itself," this case reflects why we defer to trial judges to untangle the knotty problems that jury trials sometimes present.

**{¶ 27}** From what we can glean from the record, it appears that the basic fairness of the process was preserved. The jury did find that Perez was the victim of discriminatory hiring and discriminatory termination. Its general verdicts reflected those findings. This same jury later returned with a $250,000 punitive damages award against the appellees. In the end it appears that the jury achieved its intended result.

**{¶ 28}** We find that the trial judge's reconciliation instruction did not constitute plain error. We reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

*Judgment reversed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY and LUNDBERG STRATTON, JJ., concur.

COOK, J., dissents.

———————————

**COOK, J., dissenting.**

{¶ 29} I agree with the court of appeals' judgment to reverse. This inadvertent "steering" by the trial judge meets the exceptional circumstances envisioned by the *Goldfuss* court because the error affects the "integrity * * * of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 679 N.E.2d 1099, syllabus. I would, however, grant a new trial rather than enter judgment for the defendants.

_____