DECISION AND JUDGMENT ENTRY
This is an accelerated appeal from a judgment of the Fulton County Court of Common Pleas, Western District, which granted a judgment of $4,254.46 in favor of appellee National City Bank after a trial to the bench. From that judgment, appellant Mark A. Schwiebert raises the following assignments of error:
 "1. DEFENDANT CAN NOT [SIC] BE HELD LIABLE TO PLAINTIFF FOR PAYMENT ON A NOTE AND SECURITY AGREEMENT WHEN THE PRINCIPAL BORROWER SIGNED DEFENDANT'S NAME ON THE NOTE ALLEGEDLY PURSUANT TO TELEPHONE AUTHORIZATION.
 "2. WHETHER THE COURT'S GRANTING JUDGMENT TO THE PLAINTIFF/APPELLEE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
On October 14, 1998, National City Bank filed a complaint against appellant to recover the amount due and owing on a promissory note which appellant had allegedly signed as a co-signor on December 24, 1994. In his answer, appellant denied all of the allegations of appellee's complaint and asserted that the signature on the promissory note was unauthorized and was a forgery. Appellant further asserted that it was his belief that his signature was forged by his adult son, Michael Schwiebert. On March 30, 1999, the case proceeded to a trial to the bench at which the following evidence was presented.
Appellee first called Timothy A. Printy, a former sales consultant for Honda East in Maumee, Ohio, to testify. Printy stated that in the fall of 1994, he assisted Mark and Michael Schwiebert in Michael Schwiebert's purchase of a 1995 VX600 Yamaha snowmobile. Printy testified that originally Michael Schwiebert had come into the dealership to look at snowmobiles and get a brochure. Then, on November 7, 1994, Michael returned to the dealership with his father, appellant, and the two completed an application for credit with National City Bank. In filling out that credit application, Michael completed the applicant section and appellant completed the co-applicant section. Printy testified that he told appellant that he could not sell the snowmobile to Michael unless appellant co-signed the loan. The application indicates that a down payment of $600 would be made and that the balance remaining on the snowmobile, $6,765, would be financed over thirty-six months. The next day, Printy was notified by National City Bank that the credit application had been approved. Printy then notified Michael, who returned to the dealership and deposited approximately $230 toward the down payment. Printy further testified that Michael subsequently returned to the dealership and picked out two snowmobile suits and some accessories that he wanted incorporated into the deal. Michael did not return to the dealership until December 24, 1994, when he wanted to complete the paperwork and take delivery of the snowmobile. Printy testified that on that day, Michael arrived at about 4:30 p.m., when the dealership was getting ready to close for the Christmas holiday. Printy agreed to complete the deal but told Michael that he needed appellant's signature on the promissory note and security agreement to do so. Michael responded that his father had to work late so Printy suggested that they call appellant, which they did. Printy placed the call and then handed the phone over to Michael but then told Michael that he needed to speak to appellant person ally. Printy testified that upon speaking to appellant, appellant consented to have Michael sign the promissory note and security agreement for him. Printy further testified that prior to obtaining appellant's consent, Printy specifically told appellant that the monthly payment would be $234.86. Printy continued that, upon hearing this, appellant responded: "Yeah, he knows that, you know, he'll, you know, hey, if Mike understands he's got to pay that, you know, because this is his loan, not mine." Accordingly, Printy assisted Michael in completing the promissory note and security agreement and watched as Michael signed his name and appellant's name to the documents. On cross-examination, Printy stated that although he did not have written authorization for Michael Schwiebert to sign any document on behalf of appellant, he accepted the signature because of appellant's verbal authorization and because appellant had previously completed a credit application with an intent to purchase.
The parties then stipulated that there was a default in payment on the snowmobile, that the snowmobile was not repossessed because appellee did not know of Michael Schwiebert's whereabouts, and that the amount remaining on the loan was $4,254.46. In addition, appellee asked that the complaint be amended to allege that appellant entered into the promissory note either in writing or orally and either in his personal capacity or through his agent. Appellant did not object and the court approved the amendment. Appellant then testified on his own behalf.
Appellant's memory of the events surrounding the purchase of the snowmobile differed markedly from Printy's recollection. In particular, he testified that he never gave his son a power of attorney or telephone authorization to sign the promissory note and security agreement on his behalf. He further stated that he never discussed the terms of the promissory note at any time with Printy or anyone else from Honda East. He did admit, however, that he was with his son when they picked up the snowmobile and stated that at that time the dealer told him that the payments would be between $150 and $159 per month. He then testified that when he started receiving late notices, the notices indicated that the payments were $234 per month.
Finally, appellant testified that he has made no payments on the loan.
In rebuttal, appellee called Dennis Williamson, the general manager of Honda East, to testify. Williamson stated that although he was not involved in the transaction at issue, he specifically remembered the day when Michael Schwiebert came to pick up the snowmobile. Williamson testified that on that day, Michael and his girlfriend were in Printy's office for quite a while and Printy then said he had to call appellant.
At the conclusion of the trial, the court awarded appellee a judgment of $4,254.46. It is from that judgment that appellant now appeals.
Because the assignments of error are interrelated, we will address them together. Appellant contends that he could not be held liable to appellee on the promissory note and security agreement because he did not personally sign the note. He further asserts that the trial court's judgment in favor of appellee was against the manifest weight of the evidence.
The statute of frauds, set forth in R.C. 1335.05, provides in relevant part that "[n]o action shall be brought whereby to charge the defendant, upon a special promise, to answer for the debt * * * of another * * * unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized." Accordingly, to be actionable, an agreement to answer for the debt of another must be in writing and signed by the party agreeing to answer for the debt or by someone lawfully authorized by him. In the present case, it is undisputed that appellant did not personally sign the promissory note as a co-signor. The controlling issue in this case is therefore whether Michael was lawfully authorized to sign the note for appellant.
Under agency law, "* * * a person may authorize another to do for him whatever he may lawfully do for himself." Bradley v.Farmers New World Life Ins. Co. (1996), 112 Ohio App.3d 696, 709. "Generally, an agency relationship is a contractual relationship created by agreement, either express or implied, between the parties[.]" Johnson v. Tansky Sawmill Toyota, Inc. (1994),95 Ohio App.3d 164, 167. An agency relationship, however, can also be created if a principal allows a third person to act as an apparent agent. Id. at 167-168. "To establish liability premised upon apparent agency, a plaintiff must show that (1) the defendant made representations leading the plaintiff to reason ably believe that the wrongdoer was operating as an agent under the defendant's authority, and (2) the plaintiff was thereby induced to rely upon the ostensible agency relationship to his detriment." Shafferv. Maier (1994), 68 Ohio St.3d 416, 418. See, also, MasterConsolidated Corp. v. BancOhio Natl. Bank (1991), 61 Ohio St.3d 570, syllabus. Although the trial court did not issue an opinion or decision in support of its judgment, we must presume the court determined that appellee's evidence met the above test.
Appellant now contends that the court's judgment was against the manifest weight of the evidence. "Judgments sup ported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, syllabus. Upon a review of the record in this case, we conclude that the trial court's judgment was not against the manifest weight of the evidence. Timothy Printy testified that appellant had completed a credit application with the intent of co-signing a loan for his son. Appellant agreed that this was his original intent. Printy further testified that on December 24, 1994, when Michael Schwiebert arrived at the dealership to complete the purchase of the snowmobile, he spoke to appellant by telephone at which time appellant told Printy that Michael could sign his name to the documents. Based on appellant's authorization, Printy approved Michael's signing for his father. There was no evidence before the court regarding the telephone conversation between appellant and Michael. Nevertheless, based on Printy's testimony that appellant approved the deal and based on the fact that subsequently Michael did sign the paperwork for his father, the court could infer that appellant told Michael to sign for him. Based on all of the surrounding circumstances, the court could reasonably conclude that appellant made representations leading Printy, and through him appellee, to believe that Michael had the authority to act on his behalf and that appellee was led to rely on that agency relationship to its detriment.
Accordingly, the first and second assignments of error are not well-taken.
On consideration whereof, the court finds that substantial justice has been done the party complaining and the judgment of the Fulton County Court of Common Pleas, Western Division, is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
MELVIN L. RESNICK, J.
 _______________________________ JUDGE
 JAMES R. SHERCK, J.
 _______________________________ JUDGE
 MARK L. PIETRYKOWSKI, J.
 _______________________________ JUDGE
CONCUR.