OPINION
{¶ 1} Plaintiffs-appellants, Candice Sevruk, Sean Sevruk, and Dustin Abner, appeal from a decision of the Butler County Common Pleas Court rendering summary judgment in favor of defendant-appellee, Planned Parenthood of Southwest Ohio and Northern Kentucky, with respect to appellants' malpractice claim. This case is reversed and remanded to the trial court for further proceedings according to law and consistent with this opinion.
 {¶ 2} The following facts are taken from the evidentiary material submitted by the parties in the summary judgment proceedings:
 {¶ 3} In August 1996, Candice Sevruk learned she was pregnant and sought care for her pregnancy through Planned Parenthood of Southwest Ohio and Northern Kentucky. Planned Parenthood provided Ms. Sevruk with a "Perinatal Care Information Sheet," which explains to prospective patients what happens to them on their prenatal visits to Planned Parenthood and what problems might arise during their pregnancy. The final section of the information sheet, entitled "YOUR DELIVERY," stated in pertinent part:
 {¶ 4} "* * * Your delivery will occur at Fort Hamilton Hughes Hospital, located at 630 Eaton Avenue, Hamilton, Ohio. A copy of your medical record will be sent to the hospital about one month before your due date. When you go to the hospital, it is important to tell the staff that you are a Planned Parenthood prenatal patient.
 {¶ 5} "After the delivery you will be instructed when to return to Planned Parenthood for follow up care and family planning services.
 {¶ 6} "Please be aware that all hospital and delivery charges are your responsibility."
 {¶ 7} Planned Parenthood then had Ms. Sevruk sign a "Request for Perinatal Care." This form required Ms. Sevruk to initial several statements indicating that she had read, understood, and agreed with them. The first statement was that Ms. Sevruk had received the aforementioned information sheet, had read and understood it, and had all her questions about it answered. Another statement initialed by Sevruk stated:
 {¶ 8} "I understand that all delivery and hospital charges are my responsibility. I also understand that financial responsibility for emergency medical care not provided by Planned Parenthood is my own. Even if Planned Parenthood refers me to another doctor or hospital because of a medical problem, it will be my responsibility to arrange for payment of necessary fees, and not the responsibility of Planned Parenthood."
 {¶ 9} The remainder of the form that Ms. Sevruk signed stated in relevant part:
 {¶ 10} "I hereby request to be enrolled in the Planned Parenthood prenatal program. I hereby request that a person authorized by Planned Parenthood examine me and provide me with appropriate treatment when indicated.
 {¶ 11} "I understand that delivery will be at Fort Hamilton-Hughes Hospital, attended by Dr. Nackhla."
 {¶ 12} Ms. Sevruk initialed each of the above statements on the form. She also signed a "Prenatal Clinic Education Sheet/Care Plan," indicating that members of her "Care Team" would include Dr. Phillip Carr, an obstetrician and gynecologist, and Dr. G. Habib Nackhla, whose name was proceeded by the word, "Delivery" in parentheses.
 {¶ 13} Ms. Sevruk visited Planned Parenthood "quite a few" times during her pregnancy. On most occasions, a nurse examined her, but on two occasions Dr. Carr examined her. Dr. Carr was the only physician to actually see Ms. Sevruk during her pregnancy.
 {¶ 14} In early January 1997, Ms. Sevruk decided to have her baby at Mercy Hospital rather than Fort Hamilton-Hughes Hospital because of Mercy Hospital's proximity to her home. On January 10, 1997, Ms. Sevruk executed an "Authorization for Release of Information" form, wherein she requested Planned Parenthood to transfer her medical records to Mercy Hospital. Planned Parenthood received the request on January 16, 1997 and faxed Ms. Sevruk's records to Mercy Hospital thereafter.
 {¶ 15} On January 27, 1997, Ms. Sevruk contacted Planned Parenthood and asked if she could have her delivery at Mercy Hospital rather than at Fort Hamilton-Hughes, because Mercy Hospital "was right down the street" from her. Planned Parenthood told her, "yeah, that would be fine."
 {¶ 16} On January 29, 1997, Ms. Sevruk went to Mercy Hospital to have her baby delivered. On January 30, 1997, Dr. Carr arrived to perform the delivery. Ms. Sevruk did not learn that Dr. Carr was going to handle the delivery until after she had already gone into labor. After an unsuccessful attempt at a forceps delivery, Dr. Carr performed a C-section.
 {¶ 17} On August 13, 1997, Ms. Sevruk, acting individually and as Sean's natural mother and best friend, and Sean's father, Dustin Abner, brought a malpractice complaint in Butler County Common Pleas Court against Dr. Carr, his corporation and Mercy Hospital. Appellants alleged that Sean had sustained skull fractures and other injuries as a result of Dr. Carr's negligent use of forceps in delivering him.
 {¶ 18} Dr. Carr was insured by the PIE Mutual Insurance Company, which was liquidated while appellants' lawsuit was pending. Because of PIE's liquidation, the lawsuit was stayed from December 1997 to October 1998. When the case resumed, Mercy Hospital moved for summary judgment as to appellants' claims against them. The motion was granted without objection from appellants.
 {¶ 19} In January 2001, appellants amended their complaint with leave of court to include Planned Parenthood as a defendant. Appellants alleged that, at the time he delivered Sean, Dr. Carr was an employee, agent or ostensible agent of Planned Parenthood, and therefore, Planned Parenthood was liable to them "under the theory of respondeat superior and/or ostensible agency."
 {¶ 20} In October 2001, Planned Parenthood moved for summary judgment, arguing that Dr. Carr was neither an agent nor ostensible agent of Planned Parenthood, and that "if Dr. Carr was the apparent agent for anyone, it was Mercy Hospital." Planned Parenthood further argued that appellants could not prevail on their apparent agency claim because they could not show that Planned Parenthood had made any representations to Sean Sevruk or that Sean had relied on any such representations, as Sean was unborn at the time of Dr. Carr's alleged negligence.
 {¶ 21} In January 2001, the trial court rendered summary judgment in favor of Planned Parenthood, holding that reasonable jurors could come to but one conclusion, to wit: that ostensible agency did not exist between Dr. Carr and Planned Parenthood. In support of its ruling, the trial court found that Ms. Sevruk "was aware that Planned Parenthood did not provide delivery services at Mercy Hospital." The trial court also found that pursuant to Clark v. Southview Hosp. and Family Health Ctr.,68 Ohio St.3d 435, 1994-Ohio-519, Ms. Sevruk's decision to have her delivery at Mercy Hospital because of its proximity to her home created an inference that those working in the hospital were the apparent agents of the hospital, and not Planned Parenthood. The trial court did not address Planned Parenthood's argument that Sean Sevruk, as a fetus, was incapable of having any representations made to him or acting in reliance on any such representation.[1]
 {¶ 22} Appellants appeal from the trial court's grant of summary judgment in favor of appellee, and assign the following as error:
 {¶ 23} Assignment of Error No. 1:
 {¶ 24} "THE TRIAL COURT ERRED IN MAKING A FACTUAL DETERMINATION ON SUMMARY JUDGMENT, WHEN IT DETERMINED THAT THE PLAINTIFF `WAS AWARE THAT PLANNED PARENTHOOD DID NOT PROVIDE DELIVERY SERVICES AT MERCY HOSPITAL.'"
 {¶ 25} Appellants argue the trial court erred in granting Planned Parenthood summary judgment on their apparent agency claim. Specifically, appellants argue the trial court erred by finding that Ms. Sevruk "was aware that Planned Parenthood did not provide delivery services at Mercy Hospital." Appellants assert they presented sufficient evidence to demonstrate the existence of a genuine issue of material fact with respect to that issue, which should have precluded a grant of summary judgment in Planned Parenthood's favor. We agree with appellants' argument.
 {¶ 26} Summary judgment should be granted only when the moving party demonstrates that (1) there is no genuine issue of material fact remaining to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence presented that reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his or her favor. Civ.R. 56(C); Harless v.Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66.
 {¶ 27} "To establish liability premised upon apparent agency, a plaintiff must show that (1) the defendant made representations leading the plaintiff to reasonably believe that the wrongdoer was operating as an agent under the defendant's authority, and (2) the plaintiff was thereby induced to rely upon the ostensible agency relationship to his detriment." Shaffer v. Maier, 68 Ohio St.3d 416, 418, 1994-Ohio-134, citing Johnson v. Wagner Provision Co. (1943), 141 Ohio St.3d 584. Such a representation need not be expressly made; it may stem from the defendant's words, acts or conduct. See, Shaffer at 419.
 {¶ 28} Here, appellants presented sufficient evidence to establish genuine issues of material fact on the specific issue of whether Ms. Sevruk was aware that Planned Parenthood did not provide delivery services, and the general issue of whether Ms. Sevruk reasonably believed that Dr. Carr was acting as an agent of Planned Parenthood. Ms. Sevruk was provided with a Perinatal Care Information Sheet when she first came to Planned Parenthood, and later, Planned Parenthood had her sign a Request for Perinatal Care. The word "perinatal" refers to "* * * the periods before, during, or after the time of birth; i.e., before delivery from the 28th week of gestation through the first 7 days after delivery." Stedman's Medical Dictionary (5 Lawyer's Ed. 1982) 1055. These documents suggested that Planned Parenthood would provide Ms. Sevruk with care up until and through her delivery.
 {¶ 29} Contrary to what Planned Parenthood argues, the Request for Perinatal Care does not state that it is referring Ms. Sevruk to Dr. Nackhla for delivery at Fort Hamilton-Hughes Hospital. Nor does it state that Planned Parenthood does not provide delivery services or that Ms. Sevruk should seek those services through another provider such as Dr. Nackhla. Instead, it informed Ms. Sevruk that her delivery will be at Fort Hamilton-Hughes Hospital, attended by Dr. Nackhla. We agree with appellants that the inclusion of Dr. Nackhla's name in its Request for Perinatal Care form allowed Ms. Sevruk reasonably to infer that Planned Parenthood was providing Dr. Nackhla's services as the delivery physician.
 {¶ 30} Furthermore, it is significant that Ms. Sevruk asked for Planned Parenthood's permission to have her delivery at Mercy Hospital instead of Fort Hamilton-Hughes Hospital and that Planned Parenthood gave her permission to do so. There is no evidence that Planned Parenthood advised Ms. Sevruk at this time that it did not provide delivery services and had no control over where she delivered. By giving Ms. Sevruk permission to have her delivery at Mercy Hospital rather than Fort Hamilton-Hughes, as Ms. Sevruk alleges it did, Planned Parenthood allowed the inference that permission was theirs to give or withhold. Under the totality of the circumstances, it was reasonable for Ms. Sevruk to believe that Planned Parenthood was providing delivery services at the hospital or hospitals of its choice.
 {¶ 31} Additionally, there was sufficient evidence presented to allow a jury to reasonably infer that Dr. Carr was Planned Parenthood's ostensible agent. In his deposition, Dr. Carr acknowledged that he was an employee of Planned Parenthood when he saw Ms. Sevruk twice during her pregnancy, but asserted that he was not acting as an employee when he delivered Sean Sevruk. Planned Parenthood argues that Dr. Carr made this distinction clear to Ms. Sevruk and points to Dr. Carr's deposition as support. However a careful review of Dr. Carr's deposition demonstrates that there is no convincing evidence in the record to support this contention. Dr. Carr's deposition states in relevant part as follows:
 {¶ 32} "Q. At the time you were taking care of Candy Sevruk and delivering her baby, did you consider yourself an employee of Planned Parenthood?
 {¶ 33} "A. I'm not sure — you mean for her delivery?
 {¶ 34} "Q. Right.
 {¶ 35} "A. No, sir.
 {¶ 36} "Q. That was strictly you as —
 {¶ 37} "A. We got along very well and she asked if I would deliver her baby and I agreed to. But it was as a private — in the private setting.
 {¶ 38} "Q. All right.
 {¶ 39} "A. It was not directly through Planned Parenthood at that point.
 {¶ 40} "Q. So if I gather correctly then, you probably met her when she went to Planned Parenthood for prenatal care. Planned Parenthood may have given her your name or you would have seen her, I guess, as part of prenatal care?
 {¶ 41} "A. Yes. Their protocol, they're usually seen two times during the prenatal course by a physician. The other times they're seen by a nurse, nurse practitioners, or nurse midwives.
 {¶ 42} "Q. And then you told Candy on one of the prenatal visits that you would be willing to deliver her and, therefore, from that point on then, you were a private physician caring for her?
 {¶ 43} "A. Yes, sir." (Emphasis added.)
 {¶ 44} As can be seen, it is not clear from Dr. Carr's answer to the last question whether Dr. Carr actually told Ms. Sevruk that he would be acting as a private physician when he delivered her baby. The question asked Dr. Carr if (1) he told Ms. Sevruk that he would be willing to deliver her baby, and (2) if from the point of the delivery on, he was acting as a private physician (as opposed to an employee of Planned Parenthood). It is not clear from Dr. Carr's affirmative answer to this compound question whether he actually told Ms. Sevruk that he would be willing to deliver her baby and that he would be doing so as a private physician. While Dr. Carr's testimony could be interpreted that way, Dr. Carr's testimony can also be interpreted to mean that while Dr. Carr told Ms. Sevruk he would be willing to deliver her baby, he did not actually tell Ms. Sevruk that he would be acting as a private physician when he did so, even though that was his understanding. Since the evidence must be construed in a light most favorable to appellant as the nonmoving party, Dr. Carr's deposition does not support Planned Parenthood's contention that Dr. Carr made it clear to Ms. Sevruk that he would be acting as a private physician when he performed her delivery, and not as an employee of Planned Parenthood.
 {¶ 45} Furthermore, Dr. Carr qualified his statement that he agreed to deliver Ms. Sevruk's baby "in the private setting" by adding "[i]t was not directly through Planned Parenthood at that point." (Emphasis added.) This statement indicates that Dr. Carr did not inform Ms. Sevruk that his agreeing to deliver Sean was totally divorced from his duties as a Planned Parenthood employee.
 {¶ 46} There is some evidence in the record that supports the trial court's findings that Ms. Sevruk was aware that Planned Parenthood did not provide delivery services at Mercy Hospital and that Dr. Carr was not the ostensible agent of Planned Parenthood. For instance, there is evidence to support the trial court's finding that as her delivery drew nearer, Ms. Sevruk's contacts were with Mercy Hospital, not Planned Parenthood. Additionally, Ms. Sevruk requested that Planned Parenthood transfer her records to Mercy Hospital about two weeks prior to the time she "asked" Planned Parenthood if she could have her delivery at Mercy. These facts might allow a jury reasonably to infer that Ms. Sevruk was severing her reliance on Planned Parenthood and relying on Mercy Hospital prior to her delivery. Indeed, the forms Planned Parenthood provided to Ms. Sevruk made it clear that delivery charges would be her responsibility.
 {¶ 47} However, this was not the only reasonable interpretation of the evidence presented. For the reasons we have previously mentioned, it would have been reasonable for a jury to find that Ms. Sevruk was unaware that Planned Parenthood did not provide delivery services and that Dr. Carr was Planned Parenthood's agent. When the evidence is viewed in the light most favorable to appellants as the nonmoving party as it must be, reasonable minds could come to differing conclusions about these issues; therefore, the trial court erred by granting summary judgment to Planned Parenthood. See Hounshell v. American States Ins. Co. (1981),67 Ohio St.2d 427, 433.
 {¶ 48} Appellants' first assignment of error is sustained.
 {¶ 49} Assignment of Error No. 2:
 {¶ 50} "THE TRIAL COURT ERRED IN ITS ANALYSIS OF CLARK V. SOUTHVIEW HOSPITAL (1994), 68 OHIO St.3d 435, IN HOLDING THAT IT IS THE LOCATION OF A HOSPITAL THAT CREATES ANY OSTENSILBE [SIC] AGENCY RELATIONSHIP AS OPPOSED TO THE PATIENT'S RELIANCE ON WHO WOULD BE PROVIDING MEDICAL CARE."
 {¶ 51} Appellants contend the trial court erred in applying Clark in support of its conclusion that Ms. Sevruk severed her reliance on Planned Parenthood in favor of Mercy Hospital.
 {¶ 52} Planned Parenthood argues that pursuant to Clark, if Dr. Carr should be viewed as the apparent agent of anyone, it should be Mercy Hospital. Clark held that "[a] hospital may be held liable under the doctrine of agency by estoppel for the negligence of independent medical practitioners practicing in the hospital when: (1) it holds itself out to the public as a provider of medical services; and (2) in the absence of notice or knowledge to the contrary, the patient looks to the hospital, as opposed to the individual practitioner, to provide competent medical care." Clark, 68 Ohio St.3d at syllabus, overruling paragraph four of the syllabus in Albain v. Flower Hosp. (1990), 50 Ohio St.3d 251. Clark
further held that "[u]nless the patient merely viewed the hospital as thesitus where her physician would treat her, she had a right to assume and expect that the treatment was being rendered through hospital employees and that any negligence associated therewith would render the hospital liable." (Emphasis added.) Clark at 445.
 {¶ 53} Clark was subsequently followed in Fetters v. St.Francis/St. George Hosp., Inc. (Mar. 17, 2000), Hamilton App. No. C-990410. Fetters stated in relevant part:
 {¶ 54} "Fetters [the plaintiff-appellant] produced evidence that Reed [plaintiff-appellant's decedent] and her family selected St. Francis/St. George because it was in proximity to their residence. This evidence itself permitted the inference that Reed initially looked to the hospital rather than its physicians to provide competent care." (Emphasis added.)
 {¶ 55} Planned Parenthood cited Fetters in its motion for summary judgment in support of its proposition that "[t]he selection of a hospital for medical services because of its proximity to one's housecreates an inference that those working in the hospital are the agents of the hospital." (Emphasis added.) The trial court agreed with this proposition. However, Fetters held merely that the proximity of a hospital to a patient's residence permits the inference that a patient looked to the hospital rather than its physicians to provide competent care. It does not require that inference to be drawn.
 {¶ 56} Here, there was sufficient evidence presented to allow a jury to reasonably conclude that Ms. Sevruk looked to Mercy Hospital merely as the situs for the delivery, see Clark, 68 Ohio St.3d at 445, and that she looked to Planned Parenthood, rather than the employees of Mercy Hospital, to provide competent care. Thus, neither Clark norFetters demonstrate that Planned Parenthood is entitled to summary judgment, and the trial court erred by finding otherwise.
 {¶ 57} Appellants' second assignment of error is sustained.
 {¶ 58} Planned Parenthood proposes an alternate ground for affirming the trial court's award of summary judgment, to wit: there can be no showing that any representations were made to Sean upon which he acted in reliance because Sean was only a fetus "at all relevant times" and thus incapable of acting in reliance upon any representation. Planned Parenthood asserts that his mother's reliance on any representation made to her by Planned Parenthood should not be imputed to Sean.
 {¶ 59} The trial court never ruled on this novel argument, and neither party cites any case law on point on this issue. Because this appears to be an issue of first impression, the trial court should be the first to rule on it. Accordingly, the trial court is instructed to address this issue on remand if the need should arise.
 {¶ 60} The trial court's judgment is reversed, and this cause is remanded for further proceedings consistent with this opinion and in accordance with law.
VALEN and FAIN, JJ., concur. Fain, J., of the Second Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3), Article IV of the Ohio Constitution.
[1] At oral arguments before the trial court, appellants' counsel conceded that the claims of Ms. Sevruk and Mr. Abner were barred by the statute of limitations.